RODI POLLOCK PETTKER CHRISTIAN & PRAMOV, A Law Corporation
PATRICK J. CAIN (SBN 105331)
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901
Telephone: (213) 895-4900
Facsimile: (213) 895-4921

Attorneys for FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR LYDIAN PRIVATE BANK aka VIRTUAL BANK

FILED
2012 JUL 16 PM 1:35
CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. SANTA ANA
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| CHARLES A. ELFSTEN and MARIE A. ELFSTEN,<br><br>Plaintiff,<br><br>vs.<br><br>LYDIAN PRIVATE BANK, a foreign business entity; VIRTUAL BANK, a foreign business entity and subsidiary of LYDIAN PRIVATE BANK; AZTEC FORECLOSURE CORPORATION, a California Corporation; ZULINES GONZALEZ, an individual DOUG JENNINGS, an individual; TERRY LAROCHE, an individual; STEVE LAROCHE, an individual; SABADELL UNITED BANK N.A., a foreign business entity; and DOES 4 through 20, Inclusive,<br><br>Defendants. | CASE NO. SACV12-1159 AG(RNBx)<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 and 1441 (FEDERAL QUESTION) and 12 U.S.C. §§ 1819(b)(2)(B) and 1821(d)(6)(A)) (FDIC as PARTY)** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1441, 12 U.S.C. § 1819(b)(2)(B) and 12 U.S.C. § 1821(d)(6)(A), the FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for defendant LYDIAN

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

PRIVATE BANK aka VIRTUAL BANK, ("FDIC-R") hereby removes the above-captioned lawsuit from the Superior Court of the State of California for the County of Orange, in which it currently is pending, to the United States District Court for the Central District of California, Santa Ana Division. As grounds for the removal of this case, the FDIC-R states as follows:

1. On December 21, 2010, an action was commenced in the Superior Court of the State of California in and for the County of Orange, presently entitled *CHARLES A. ELFSTEN and MARIE A. ELFSTEN, Plaintiff, vs. LYDIAN PRIVATE BANK, a foreign business entity; VIRTUAL BANK, a foreign business entity and subsidiary of LYDIAN PRIVATE BANK; AZTEC FORECLOSURE CORPORATION, a California Corporation; ZULINES GONZALEZ, an individual DOUG JENNINGS, an individual; TERRY LAROCHE, an individual; STEVE LAROCHE, an individual; SABADELL UNITED BANK N.A., a foreign business entity; and DOES 4 through 20, Inclusive, Defendants*, Case No. 30-2010-00434711 (the "Action").

2. On August 19, 2011, the Office of the Comptroller of the Currency gave its notice and order of appointment by which it appointed the FDIC-R as receiver for Lydian Private Bank. In that regard, attached as Exhibits A through C, respectively, are true and correct copies of the following: (i) Receivership Determination and Appointment of Receiver; (ii) Notice of Appointment as Receiver; and, (iii) Publication Notice to Creditors and Depositors of Lydian Private Bank.

3. Pursuant to 12 U.S.C §1821(d)(2)(A) FDIC-R succeeded, by operation of law, to "all rights, titles, powers and privileges of the insured depository institution…".

4. The transfer of interest on appointment as receiver "is not an ordinary transfer of interest....[b]ecause the failed institution 'cease[s] to exist,' *McAninch v. Wintermute*, 491 F.3d 759, 767 (8th Cir. 2007), and "vanishe[s] in a puff of smoke,"

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

589555.1
2
NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 and 1441 (FEDERAL QUESTION) and 12 U.S.C. §§ 1819(b)(2)(B) and 1821(d)(6)(A)) (FDIC as PARTY)

Buczkowski, 415 F.3d at 597, the FDIC necessarily becomes a party to an action when it files a notice of substitution, and as a matter of federal law a state court does not have any discretion to deny substitution of the FDIC for a failed institution which no longer has a separate existence." *Federal Deposit Insurance Corporation v. North Savannah Properties, LLC*, No. 11-12784 at 9 (11th Cir., July 12, 2012), copy attached. *See also* *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994); *Coit v. Independence Joint Venture v. FSLIC*, 489 U.S. 561, 585 (1989); *Federal Savings and Loan Insurance Corp.*, 837 F.2d 432, 434 (11th Cir. 1988); *Vernon v. FDIC, 981 F.2d 1230, 1234* (11th Cir. 1993).

5. On July 16, 2012, the FDIC-R first became a party to the Action when it filed its Notice of Substitution of FDIC as Receiver for Lydian Private Bank, a true and correct copy of which is attached as Exhibit D to this Notice of Removal.

6. Pursuant to 28 U.S.C. § 1446(a), attached as Exhibit E to this Notice is a copy of the fourth amended complaint in the Action, filed on or about January 26, 2012.

JURISDICTION

(FEDERAL QUESTION)

7. Lydian Private Bank aka Virtual Bank is in receivership and as a result of the appointment of the FDIC as its receiver, the FDIC succeeded to "all rights, titles, powers, and privileges" of the failed institution and may "take over the assets of and operate" the failed institution with all the powers thereof. 12 U.S.C. §§1821(d)(2)(A)(i) and 1821(d)(2)(B)(i).

8. The case is removable pursuant to 28 U.S.C. § 1441(b) which provides in relevant part: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

9. Further, the FDIC has a statutory right to remove cases in which it is a

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

589555.1

3

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 and 1441 (FEDERAL QUESTION) and 12 U.S.C. §§ 1819(b)(2)(B) and 1821(d)(6)(A)) (FDIC as PARTY)

party from state court to federal court pursuant to the Financial Institution Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, § 209, 103 Stat. 183 *et seq*. Specifically, 12 U.S.C. § 1819(b)(2)(B) provides in pertinent part:

> Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date of the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.

10. Any civil suit in which the FDIC, in any capacity, is a party is "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(A)(2)(A); see also Bullion Services, Inc. v. Valley State Bank, 50 F.3d 705, 707 (9th Cir. 1995). A federal party having an independent statutory right to remove may remove a matter without the joinder of all defendants. *See* Davis v. FSLIC, 879 F.2d 1288, 1289 (5th Cir. 1989). The FDIC is such a federal party and has an independent statutory right to remove pursuant to 12 USC § 1819(b)(2)(B).

11. The instant Notice of Removal is being filed within the 90-day period from the date FDIC-R first became a party to the Action as Receiver for Lydian Private Bank aka Virtual Bank.

13. The FDIC-R has promptly served notice of the filing of this removal to all parties of record in the Action and to the Clerk of the Orange County Superior Court, pursuant to 28 U.S.C. § 1446(d).

VENUE

7. Because the Action was commenced in the County of Orange, venue for the removed case in the Santa Ana Division of this Court is appropriate 28 U.S.C. §§ 1441(a) and 1446(a).

///

///

///

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

589555.1

4

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 and 1441 (FEDERAL QUESTION) and 12 U.S.C. §§ 1819(b)(2)(B) and 1821(d)(6)(A)) (FDIC as PARTY)

DATED: July 16, 2012

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV, A Law Corporation

By: [signature]
Patrick J. Cain
Attorneys for FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR LYDIAN PRIVATE BANK aka VIRTUAL BANK

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

589555.1

5

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 and 1441 (FEDERAL QUESTION) and 12 U.S.C. §§ 1819(b)(2)(B) and 1821(d)(6)(A)) (FDIC as PARTY)

# EXHIBIT A

UNITED STATES OF AMERICA
OFFICE OF THE COMPTROLLER OF THE CURRENCY
WASHINGTON, D.C.

**Receivership Determination and Appointment of Receiver**

Lydian Private Bank
Palm Beach, Florida
Charter Number 716406

**WHEREAS,** the Comptroller of the Currency has delegated to me the authority to appoint a receiver for a Federal savings association under 12 U.S.C. §§ 1464(d)(2) and 1821(c)(5);

**WHEREAS,** the above captioned Federal savings association ("Bank") is insured by the Federal Deposit Insurance Corporation;

**WHEREAS,** from information available to the Office of the Comptroller of the Currency ("OCC") and pursuant to 12 U.S.C. § 1464(d)(2), I have determined that the following grounds exist for the appointment of a receiver for the Bank:

(1) The Bank has experienced substantial dissipation of assets or earnings due to any unsafe or unsound practice. 12 U.S.C. § 1821(c)(5)(B)(ii).

(2) The Bank is in an unsafe or unsound condition to transact business. 12 U.S.C. § 1821(c)(5)(C).

(3) The Bank has incurred or is likely to incur losses that will deplete all or substantially all of its capital, and there is no reasonable prospect for the institution to become adequately capitalized (as defined in 12 U.S.C. § 1831*o*(b)) without Federal assistance. 12 U.S.C. § 1821(c)(5)(G).

(4) The Bank's unsafe or unsound practices or conditions are likely to cause substantial dissipation of assets or earnings. 12 U.S.C. § 1821(c)(5)(H)(i).

(5) The Bank's unsafe or unsound practices or conditions are likely to weaken the institution's condition. 12 U.S.C. § 1821(c)(5)(H)(ii).

(6) The Bank's unsafe or unsound practices or conditions are likely to seriously prejudice the interests of the Deposit Insurance Fund. 12 U.S.C. § 1821(c)(5)(H)(iii).

(7) The Bank is undercapitalized (as defined in 12 U.S.C. § 1831*o*(b)), and has no

reasonable prospect of becoming adequately capitalized (as defined in that section). 12 U.S.C. § 1821(c)(5)(K)(i).

(8) The Bank is undercapitalized (as defined in 12 U.S.C. § 1831*o*(b)), and has failed to submit a capital restoration plan acceptable to the appropriate Federal banking agency within the time prescribed under 12 U.S.C. § 1831*o*(e)(2)(D). 12 U.S.C. § 1821(c)(5)(K)(iii).

(9) The Bank is critically undercapitalized, as defined in 12 U.S.C. § 1831*o*(b). 12 U.S.C. § 1821(c)(5)(L)(i).

**WHEREAS**, in my discretion, I have determined that the Federal Deposit Insurance Corporation should be appointed Receiver for the Bank;

**NOW THEREFORE**, pursuant to 12 U.S.C. §§ 1464(d)(2) and 1821(c) and the power, duty, and authority vested in me by law, I do hereby appoint the Federal Deposit Insurance Corporation as Receiver for the Bank, with all of the powers, duties, and responsibilities given to or imposed upon a receiver under the provisions of the laws of the United States which authorize and direct the appointment of such receiver.

Michael L. Brosnan
Senior Deputy Comptroller for Large Bank Supervision

Dated: August 19, 2011

# EXHIBIT B



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

August 19, 2011

James B. Meany
President and Interim Chief Executive Officer
Lydian Private Bank
180 Royal Palm Way
Palm Beach, Florida 33480

Re:    Lydian Private Bank Palm Beach, Florida (Charter Number 716406)

Dear Mr. Meany:

Pursuant to the provisions of 12 U.S.C. §§ 1464(d)(2) and 1821(c) and pursuant to the authority the Comptroller of the Currency has delegated to me to appoint a receiver for a Federal savings association under 12 U.S.C. §§ 1464(d)(2) and 1821(c)(5), I have determined that grounds exist for the appointment of a receiver for Lydian Private Bank, Palm Beach, Florida ("Bank"). Therefore, I have placed the Bank in the charge of the Federal Deposit Insurance Corporation as Receiver.  Enclosed is the *Receivership Determination and Appointment of Receiver* for the Bank.

Very truly yours,

Michael L. Brosnan
Senior Deputy Comptroller for Large Bank Supervision

Enclosure

# EXHIBIT C

PUBLICATION
NOTICE TO
CREDITORS AND DEPOSITORS OF
**Lydian Private Bank**
**Palm Beach, FL**


On August 19, 2011, (the "Closing Date), Lydian Private Bank (the "Failed Institution") was closed by the Office of the Comptroller of the Currency, and the Federal Deposit Insurance Corporation was appointed as receiver of the Institution (the "Receiver"). Under the laws of the United States, the Receiver is charged with the duty of winding up the affairs of the Failed Institution.


**TO THE CREDITORS OF THE FAILED INSTITUTION**

All creditors having claims against the Failed Institution must submit their claims in writing, together with proof of the claims, to the Receiver on or before November 22, 2011 (the "Claims Bar Date").  Claims may be submitted via the internet on the FDIC web site, by fax or by mail to the following address:

FDIC as Receiver of
Lydian Private Bank
7777 Baymeadows Way West
Jacksonville, FL 32256
Attention: Claims Agent

You can obtain an official Proof of Claim form and instructions at www.fdic.gov or by calling (904) 256-3925.

**Under federal law, failure to file a claim on or before the Claims Bar Date will result in disallowance of the claim by the Receiver.  The disallowance will be final.  12 U.S.C. Section 1821(d)(5)(C).**

NOTE TO CLASS CLAIMANTS: By law, the Receiver will not accept a claim filed on behalf of a proposed class of individuals or entities or a class of individuals or entities certified by a court. EACH individual or entity must file a separate claim with the Receiver.


**TO THE DEPOSITORS OF THE FAILED INSTITUTION**

The FDIC, which insures your deposits in its corporate capacity (the "FDIC"), arranged for the transfer of all deposits ("Deposits") -  including the uninsured amounts - at the Failed Institution to another insured depository institution, **Sabadell United Bank, National Association** (the "New Institution").  This arrangement should minimize any inconvenience from the closing of the Failed Institution. **You may leave your Deposits in the New Institution, but you must take action to claim ownership of your Deposits.**

Federal law, 12 U.S.C. Section 1822(e), requires you to claim ownership of ("claim") your Deposits at the New Institution by taking any of the following actions within **18** months from the

Closing Date.  If you have more than one account, your action in claiming your Deposit in one account will automatically claim your Deposits in all of your accounts.

1. Make a deposit to or withdrawal from your account(s).  This includes writing a check on any account, having an automated direct deposit credited to or an automated withdrawal debited from any account or closing the account;
2. Execute a new signature card on your account(s), enter into a new deposit agreement with the New Institution, change the ownership on your account(s), or renegotiate the terms of your certificate of deposit account(s) (if any);
3. Provide the New Institution with a completed change of address form; or
4. Write to the New Institution and notify it that you wish to keep your account(s) active with the New Institution.  Please be sure to include the name of the account(s), the account number(s), the signature of an authorized signer on the account(s) and a name and address.

Please be advised that Official Items issued by the Failed Institution, e.g., cashier's checks, dividend checks, interest checks, expense checks, and money orders are all considered to be Deposits and must be claimed within 18 months from the Closing Date.

If you do not claim ownership of your Deposits at the New Institution within 18 months from the Closing Date, federal law requires the New Institution to return your Deposits to the FDIC, which may be required to deliver them as unclaimed property to the State indicated in your address on the Failed Institution's records.  12 U.S.C. Section 1822(e).  If your address is outside of the United States, the FDIC may be required to deliver the Deposits to the State in which the Failed Institution had its main office.  If the State accepts custody of your Deposits, you will have 10 years from the date of delivery to claim your Deposits from the State.  After 10 years, you will be permanently barred from claiming your Deposits.

If the State does not take custody of your Deposits after the 18-month period, you may claim your Deposits from the FDIC until the receivership of the Failed Institution is terminated.  A receivership may be terminated at any time.  Once the receivership terminates, you will not be able to claim your Deposits.

# EXHIBIT D

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV, A Law Corporation
PATRICK J. CAIN (SBN 105331)
pjc@rodipollock.com
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901
Telephone: (213) 895-4900
Facsimile: (213) 895-4921

Attorneys for FDIC As Receiver for Lydian Private Bank aka Virtual Bank

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

CHARLES A. ELFSTEN and MARIE A. ELFSTEN,

Plaintiff,

vs.

LYDIAN PRIVATE BANK, a foreign business entity; VIRTUAL BANK, a foreign business entity and subsidiary of LYDIAN PRIVATE BANK; AZTEC FORECLOSURE CORPORATION, a California Corporation; ZULINES GONZALEZ, an individual DOUG JENNINGS, an individual; TERRY LAROCHE, an individual; STEVE LAROCHE, an individual; SABADELL UNITED BANK N.A., a foreign business entity; and DOES 4 through 20, Inclusive, ,

Defendants.

CASE NO. 30-2010-00434711

**NOTICE OF SUBSTITUTION OF FDIC AS RECEIVER FOR LYDIAN PRIVATE BANK**

Dept.: C-9
Judge: Hon. John C. Gastelum, Dept. C-9
Action Filed: December 21, 2010

**TO THE COURT AND TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that the Federal Deposit Insurance Corporation ("FDIC") has been appointed the receiver ("FDIC-R") for defendant Lydian Private Bank, aka Virtual Bank ("Lydian Private Bank") and, pursuant to 12 U.S.C. § 1821(d)(2)(A) is the successor in interest to Lydian Private Bank and is by this Notice substituting itself as the real party in interest in place of Lydian Private Bank.

On August 19, 2011, the Office of the Comptroller of the Currency gave its notice and order of appointment by which it appointed the FDIC-R as receiver for Lydian Private Bank. In that regard, attached as Exhibits A through C, respectively, are true and correct copies of the following: (i) Receivership Determination and Appointment of Receiver; (ii) Notice of Appointment as Receiver; and, (iii) Publication Notice to Creditors and Depositors of Lydian Private Bank.

Pursuant to 12 U.S.C §1821(d)(2)(A) FDIC-R succeeded, by operation of law, to "all rights, titles, powers and privileges of the insured depository institution…".

The transfer of interest on appointment of the "is not an ordinary transfer of interest....[b]ecause the failed institution 'cease[s] to exist,' McAninch v. Wintermute, 491 F.3d 759, 767 (8th Cir. 2007), and "vanishe[s] in a puff of smoke," Buczkowski, 415 F.3d at 597, the FDIC necessarily becomes a party to an action when it files a notice of substitution, and as a matter of federal law a state court does not have any discretion to deny substitution of the FDIC for a failed institution which no longer has a separate existence." Federal Deposit Insurance Corporation v. North Savannah Properties, LLC, No. 11-12784 at 9 (11th Cir., July 12, 2012), copy attached. See also O'Melveny & Myers v. FDIC, 512 U.S. 79, 86 (1994); Coit v. Independence Joint Venture v. FSLIC, 489 U.S. 561, 585 (1989); Federal Savings and Loan Insurance Corp., 837 F.2d 432, 434 (11th Cir. 1988); Vernon v. FDIC, *981 F.2d 1230, 1234* (11th Cir. 1993)

DATED: July 16, 2012

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV, A Law Corporation

By: [signature]
Patrick J. Cain
Attorneys for FDIC As Receiver for Lydian Private Bank aka Virtual Bank

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

# EXHIBIT A

**UNITED STATES OF AMERICA
OFFICE OF THE COMPTROLLER OF THE CURRENCY
WASHINGTON, D.C.**

**Receivership Determination and Appointment of Receiver**

Lydian Private Bank
Palm Beach, Florida
Charter Number 716406

**WHEREAS,** the Comptroller of the Currency has delegated to me the authority to appoint a receiver for a Federal savings association under 12 U.S.C. §§ 1464(d)(2) and 1821(c)(5);

**WHEREAS,** the above captioned Federal savings association ("Bank") is insured by the Federal Deposit Insurance Corporation;

**WHEREAS,** from information available to the Office of the Comptroller of the Currency ("OCC") and pursuant to 12 U.S.C. § 1464(d)(2), I have determined that the following grounds exist for the appointment of a receiver for the Bank:

(1) The Bank has experienced substantial dissipation of assets or earnings due to any unsafe or unsound practice. 12 U.S.C. § 1821(c)(5)(B)(ii).

(2) The Bank is in an unsafe or unsound condition to transact business. 12 U.S.C. § 1821(c)(5)(C).

(3) The Bank has incurred or is likely to incur losses that will deplete all or substantially all of its capital, and there is no reasonable prospect for the institution to become adequately capitalized (as defined in 12 U.S.C. § 1831*o*(b)) without Federal assistance. 12 U.S.C. § 1821(c)(5)(G).

(4) The Bank's unsafe or unsound practices or conditions are likely to cause substantial dissipation of assets or earnings. 12 U.S.C. § 1821(c)(5)(H)(i).

(5) The Bank's unsafe or unsound practices or conditions are likely to weaken the institution's condition. 12 U.S.C. § 1821(c)(5)(H)(ii).

(6) The Bank's unsafe or unsound practices or conditions are likely to seriously prejudice the interests of the Deposit Insurance Fund. 12 U.S.C. § 1821(c)(5)(H)(iii).

(7) The Bank is undercapitalized (as defined in 12 U.S.C. § 1831*o*(b)), and has no

reasonable prospect of becoming adequately capitalized (as defined in that section). 12 U.S.C. § 1821(c)(5)(K)(i).

(8) The Bank is undercapitalized (as defined in 12 U.S.C. § 1831*o*(b)), and has failed to submit a capital restoration plan acceptable to the appropriate Federal banking agency within the time prescribed under 12 U.S.C. § 1831*o*(e)(2)(D). 12 U.S.C. § 1821(c)(5)(K)(iii).

(9) The Bank is critically undercapitalized, as defined in 12 U.S.C. § 1831*o*(b). 12 U.S.C. § 1821(c)(5)(L)(i).

**WHEREAS**, in my discretion, I have determined that the Federal Deposit Insurance Corporation should be appointed Receiver for the Bank;

**NOW THEREFORE**, pursuant to 12 U.S.C. §§ 1464(d)(2) and 1821(c) and the power, duty, and authority vested in me by law, I do hereby appoint the Federal Deposit Insurance Corporation as Receiver for the Bank, with all of the powers, duties, and responsibilities given to or imposed upon a receiver under the provisions of the laws of the United States which authorize and direct the appointment of such receiver.

Michael L. Brosnan
Senior Deputy Comptroller for Large Bank Supervision

Dated: August 19, 2011

# EXHIBIT B



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

August 19, 2011

James B. Meany
President and Interim Chief Executive Officer
Lydian Private Bank
180 Royal Palm Way
Palm Beach, Florida 33480

Re:    Lydian Private Bank Palm Beach, Florida (Charter Number 716406)

Dear Mr. Meany:

Pursuant to the provisions of 12 U.S.C. §§ 1464(d)(2) and 1821(c) and pursuant to the authority the Comptroller of the Currency has delegated to me to appoint a receiver for a Federal savings association under 12 U.S.C. §§ 1464(d)(2) and 1821(c)(5), I have determined that grounds exist for the appointment of a receiver for Lydian Private Bank, Palm Beach, Florida ("Bank"). Therefore, I have placed the Bank in the charge of the Federal Deposit Insurance Corporation as Receiver. Enclosed is the *Receivership Determination and Appointment of Receiver* for the Bank.

Very truly yours,

Michael L. Brosnan
Senior Deputy Comptroller for Large Bank Supervision

Enclosure

# EXHIBIT C

PUBLICATION
NOTICE TO
CREDITORS AND DEPOSITORS OF
**Lydian Private Bank**
**Palm Beach, FL**

On August 19, 2011, (the "Closing Date), Lydian Private Bank (the "Failed Institution") was closed by the Office of the Comptroller of the Currency, and the Federal Deposit Insurance Corporation was appointed as receiver of the Institution (the "Receiver"). Under the laws of the United States, the Receiver is charged with the duty of winding up the affairs of the Failed Institution.

**TO THE CREDITORS OF THE FAILED INSTITUTION**

All creditors having claims against the Failed Institution must submit their claims in writing, together with proof of the claims, to the Receiver on or before November 22, 2011 (the "Claims Bar Date"). Claims may be submitted via the internet on the FDIC web site, by fax or by mail to the following address:

FDIC as Receiver of
Lydian Private Bank
7777 Baymeadows Way West
Jacksonville, FL 32256
Attention: Claims Agent

You can obtain an official Proof of Claim form and instructions at www.fdic.gov or by calling (904) 256-3925.

**Under federal law, failure to file a claim on or before the Claims Bar Date will result in disallowance of the claim by the Receiver. The disallowance will be final. 12 U.S.C. Section 1821(d)(5)(C).**

NOTE TO CLASS CLAIMANTS: By law, the Receiver will not accept a claim filed on behalf of a proposed class of individuals or entities or a class of individuals or entities certified by a court. EACH individual or entity must file a separate claim with the Receiver.

**TO THE DEPOSITORS OF THE FAILED INSTITUTION**

The FDIC, which insures your deposits in its corporate capacity (the "FDIC"), arranged for the transfer of all deposits ("Deposits") - including the uninsured amounts - at the Failed Institution to another insured depository institution, **Sabadell United Bank, National Association** (the "New Institution"). This arrangement should minimize any inconvenience from the closing of the Failed Institution. **You may leave your Deposits in the New Institution, but you must take action to claim ownership of your Deposits.**

Federal law, 12 U.S.C. Section 1822(e), requires you to claim ownership of ("claim") your Deposits at the New Institution by taking any of the following actions within **18** months from the

Closing Date.  If you have more than one account, your action in claiming your Deposit in one account will automatically claim your Deposits in all of your accounts.

1.  Make a deposit to or withdrawal from your account(s).  This includes writing a check on any account, having an automated direct deposit credited to or an automated withdrawal debited from any account or closing the account;
2.  Execute a new signature card on your account(s), enter into a new deposit agreement with the New Institution, change the ownership on your account(s), or renegotiate the terms of your certificate of deposit account(s) (if any);
3.  Provide the New Institution with a completed change of address form; or
4.  Write to the New Institution and notify it that you wish to keep your account(s) active with the New Institution.  Please be sure to include the name of the account(s), the account number(s), the signature of an authorized signer on the account(s) and a name and address.

Please be advised that Official Items issued by the Failed Institution, e.g., cashier's checks, dividend checks, interest checks, expense checks, and money orders are all considered to be Deposits and must be claimed within 18 months from the Closing Date.

If you do not claim ownership of your Deposits at the New Institution within 18 months from the Closing Date, federal law requires the New Institution to return your Deposits to the FDIC, which may be required to deliver them as unclaimed property to the State indicated in your address on the Failed Institution's records.  12 U.S.C. Section 1822(e).  If your address is outside of the United States, the FDIC may be required to deliver the Deposits to the State in which the Failed Institution had its main office.  If the State accepts custody of your Deposits, you will have 10 years from the date of delivery to claim your Deposits from the State.  After 10 years, you will be permanently barred from claiming your Deposits.

If the State does not take custody of your Deposits after the 18-month period, you may claim your Deposits from the FDIC until the receivership of the Failed Institution is terminated.  A receivership may be terminated at any time.  Once the receivership terminates, you will not be able to claim your Deposits.

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 444 South Flower Street, Suite 1700, Los Angeles, CA 90071-2901.

On July 16, 2012, I served true copies of the following document(s) described as **NOTICE OF SUBSTITUTION OF FDIC AS RECEIVER FOR LYDIAN PRIVATE BANK** on the interested parties in this action as follows:

George Steven Wass
c/o Cliff Casey
777 E. Tahquitz Canyon #200-19
Palm Springs, CA 92262
Tel: 760/774-3000

Eric D. Houser, Esq.
Brian Edwards,f Esq.
Houser & Allison
A Professional Corporation
9970 Research Drive
Irvine, CA 92618
Tel: 949/679-1111
Fax: 949/679-1112

Robin Prema Wright, Esq.
Nicole K. Neff, Esq.
Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Tel: 949/477-5050
Fax: 949/477-9200

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Rodi Pollock Pettker Christian & Pramov's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 16, 2012, at Los Angeles, California.

Lupe Dominguez

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

# EXHIBIT E

BE

MICHAEL J. KARLIN (SBN 272442)
LAW OFFICES OF L. SCOTT KARLIN
13522 NEWPORT AVENUE, SUITE 201
TUSTIN, CA 92780
(714) 731-3283 / fax: (714) 731-5741

Attorneys for Plaintiffs:
CHARLES A. ELFSTEN and MARIE A. ELFSTEN

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

| | |
|---|---|
| CHARLES A. ELFSTEN and MARIE A. ELFSTEN;<br><br>Plaintiffs,<br><br>v.<br><br>LYDIAN PRIVATE BANK, a foreign business entity; VIRTUALBANK, a foreign business entity and subsidiary of LYDIAN PRIVATE BANK; AZTEC FORECLOSURE CORPORATION, a California Corporation; ZULINES GONZALEZ, an individual, DOUG JENNINGS, an individual; TERRY LAROCHE, an individual; STEVE LAROCHE, an individual; SABADELL UNITED BANK N.A., a foreign business entity; and DOES 4 through 20, Inclusive,<br><br>Defendants. | CASE NO.: 30-2010 00434711<br><br>**FOURTH AMENDED COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT**<br>**2. DECLARATORY RELIEF**<br>**3. MISREPRESENTATION**<br>**4. NEGLIGENT MISREPRESENTATION**<br>**5. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**6. NEGLIGENCE**<br>**7. UNFAIR DEBT COLLECTION PRACTICE**<br><br>Dept: C-9<br>Compl. Filed: December 21, 2010<br>Judge: Hon. John C. Gastelum |

Plaintiffs allege:

1. Plaintiff, Charles A. Elfsten, is now, and at all times mentioned in this Fourth Amended Complaint was, an individual, with his principle residence located in Orange County, California.

2. Plaintiff, Marie A. Elfsten, is now, and at all times mentioned in this Fourth Amended Complaint was, an individual, with her principle residence located in Orange County, California. Plaintiffs, Charles A. Elfsten and Marie A. Elfsten, are husband and wife.

3. Defendant, Lydian Private Bank, is a foreign business entity located in Palm Beach, Florida, and at all times mentioned herein is and was doing business in the County of Orange, California. Hereinafter referred to as "Lydian."

4. Defendant, Virtualbank, is a foreign business entity and at all times mentioned herein is and was doing business in the County of Orange, California. Virtualbank is a subsidiary of Lydian Private Bank.

5. Defendant, Zulines Gonzalez, is now, and at all times mentioned in this Fourth Amended Complaint was, an individual, employee, agent or officer of Defendant, Virtualbank, a foreign business entity and subsidiary of Defendant Lydian Private Bank, and doing business in Orange County, California.

6. Defendant, Terry LaRoche, is an individual, and was at all times mentioned in this Fourth Amended Complaint, an agent of Defendant, Virtualbank, a foreign business entity and subsidiary of Defendant Lydian Private Bank, and doing business in Orange County, California. Defendant Terry LaRoche's identity was unknown at the time of filing the Verified Complaint, the Verified First Amended Complaint, and the Second Complaint, and Defendant was named as Doe 1. The identity of Defendant has since been discovered.

7. Defendant, Steve LaRoche, is an individual, and was at all times mentioned in this Fourth Amended Complaint, an agent of Defendant, Virtualbank, a foreign business entity and subsidiary of Defendant Lydian Private Bank, and doing business in Orange County, California. Defendant Steve LaRoche's identity was unknown at the time of filing the Verified Complaint, the Verified First Amended Complaint, and the Second Complaint, and Defendant was named as Doe 2. The identity of Defendant has since been discovered.

8. Defendant, Doug Jennings, is now, and at all times mentioned in this Fourth Amended Complaint was, an individual, employee, agent and officer of Defendant, Virtualbank, a foreign business entity and subsidiary of Defendant Lydian Private Bank, and doing business in Orange County, California. At all times herein mentioned, Doug Jennings was an officer of Defendants Lydian and Virtualbank with the title "Senior Collections Manager." Plaintiffs are informed and believe, and on that belief allege that at all times herein mentioned Douglas Jennings was the most senior management level person for Lydian Private Bank and Virtualbank handling all matters in the United States related to collecting and servicing of any and all loans of Lydian and Virualbank and making all management and policy decisions regarding collecting and servicing said loans.

9. Defendant, Sabadell United Bank N.A., is a foreign business entity located in Miami, Florida. Hereinafter referred to as "Sabadell". Sometime in the second half of 2011, Sabadell became the successor in interest in, and to, Lydian Private Bank and Virtualbank, and Sabadell has assumed all the liabilities of Lydian and Virtual Bank, including the liabilities that are the subject of this action. Collectively Lydian, Sabadell, and Virtualbank are sometimes hereinafter referred to as "Defendant Banks". Defendant Sabadell was not a successor in interest at the time of filing the Verified Complaint, the Verified First Amended

Complaint, and the Second Complaint, and Sabadell's name was unknown at the time of filing the Third Amended Complaint, and Defendant was named as Doe 3. The identity of Defendant has since been discovered.

10. Plaintiffs are informed and believe, and on the basis of that information and belief, allege that at all times mentioned in this Fourth Amended Complaint, Defendants, and unidentified parties currently named as a DOE defendant(s) herein, were the agents and employees of all other named Defendants, and in doing the acts and things alleged in the Fourth Amended Complaint were acting within the course and scope of that agency and employment.

11. The true names and capacities of defendant(s) DOES 4 through 20, inclusive, are unknown to Plaintiffs at this time. Plaintiffs sue those defendant(s), and each of them, by such fictitious names pursuant to the Code of Civil Procedure. Plaintiffs will seek leave of court to amend this Fourth Amended Complaint when the true names and capacities of said Defendants are fully ascertained. Plaintiffs are informed and believe, and based on that information and belief allege, that the named defendant(s) herein, and each of the parties designated as DOES, and each of them, are legally responsible jointly and severally for the events and happenings referred to in this Fourth Amended Complaint, and unlawfully caused the damages to Plaintiffs as alleged herein.

## PRELIMINARY ALLEGATIONS

12. On or around November 22, 2000, Plaintiffs Charles A. Elfsten and Marie A. Elfsten (hereinafter "Plaintiffs") purchased the real property located at 40 Chandon, Unit 31, Newport Coast, California 92657. At all times mentioned herein, Plaintiffs were, and are currently, the record owners of the improved real property located at 40 Chandon, Unit 31,

Newport Coast, California 92657 (hereinafter sometimes referred to as the "Property", the "Subject Property" or "Home").

13.     On or around February 10, 2003, Plaintiffs were looking to obtain a new mortgage loan on the Property.  Plaintiffs approached Defendant Virtualbank to obtain the loan. Virtualbank operates as a subsidiary of Defendant Lydian.  Lydian has since taken over all operating activity of Virtualbank, and is a successor in interest in, and to, Virtualbank (and recently Lydian and Virtualbank have become the successor in interest of Defendant Sabadell).  On February 10, 2003, Plaintiffs came to an agreement with Defendant Virtualbank for a first position mortgage loan of $650,000 on the Property and signed a First Mortgage Deed of Trust on the Property. (Attached hereto as Exhibit "A" is a copy of the Loan Agreement for the First Mortgage).

14.     On April 19, 2005, Plaintiffs approached Defendant Virtualbank about obtaining a second position mortgage loan of $325,000 on the Property.  On April 19, 2005, Plaintiffs entered into a loan agreement with Defendant Virtualbank and executed a Second Mortgage Deed of Trust on the Property.  (Attached hereto as Exhibit "B" is a copy of the Loan Agreement for the Second Mortgage).  Exhibit A and Exhibit B are hereinafter collectively referred to as the "Loan Agreements".

15.     After Plaintiffs missed some payments, Defendants Lydian and Virtualbank, by and through their agent and employee Defendant Zulines Gonzalez, on or about November 20, 2009, stated to Plaintiffs that they should pay current their second mortgage and not to be concerned about paying current the first mortgage.  When Plaintiff Charles Elfsten asked Defendant Gonzalez, "shouldn't I pay current the first," he was told that if they paid current their second mortgage, then the Defendants would "work with them" in bringing their first

mortgage current.  Further, Defendant Gonzalez said words to the effect that so long as the second mortgage was made current, the first mortgage could be paid current in a reasonable time, after Plaintiffs had another closing, and that as long as they paid current the second mortgage, that for a reasonable time Defendants would not take action to foreclose on their first mortgage.   Plaintiffs are informed and believe, and on that information and belief allege that at the time this statement was made, Defendant Gonzalez knew that Defendants planned to take action to foreclose on the first trust deed and file a notice of default within the next two weeks on the first trust deed regardless of whether the second mortgage was paid current. Plaintiffs understood from what was said that with the reinstatement of the second mortgage they had until at least December 31, 2009 to reinstate the first mortgage.  In reliance on said statements, on or about November 20, 2009, Plaintiffs paid current their second mortgage, and from November 20, 2009 to December 10, 2009, did not set aside other personal and business matters in order to obtain the funds needed to avoid the filing of the Notice of Default on the first mortgage and did not pay current the first mortgage.  Had these representations set forth in this paragraph not been made, Plaintiff would have obtained funds and paid current the first mortgage prior to December 9, 2009 to avoid a foreclosure filing.

Further, on December 1, 2009, Defendant Gonzalez specifically told Plaintiffs they had until the end of the December 2009 to bring current the amount due on the first mortgage, as Lydian and Virtual had no intention of taking any action to foreclose on the first mortgage before the end of December.  This affirms her November 20, 2009 statements and affirming that both she and Plaintiffs understood that her reference on November 20 to reasonable time meant until of the end of December 2009.  In reliance on Defendant Gonzalez's December 1, 2009 statement, Plaintiffs refrained from making payments to bring

current any amount due on the first mortgage from December 1, 2009 until after December 10, 2009. Plaintiffs are informed and believe, and on that basis allege that at the time Defendant Gonzalez made the December 1, 2009 statements she knew that Defendants Lydian and Virtualbank were planning on, and were in the process of, causing a foreclosure on the first mortgage by filing a Notice of Default. Contrary to what was stated by Defendants on December 1, 2009, as set forth in this paragraph, Defendants Lydian and Virtualbank had every intention of immediately causing Aztec Foreclosure Corporation to record the Notice of Default ("NOD") with the Orange County Recorder's Office on or before December 9, 2009, and the NOD was recorded on December 9, 2009. As a result of the foreclosure filing, Plaintiff was damaged in an amount to be proven at trial. Said damages include, but are not limited to damages to Plaintiffs' credit, in having to pay additional fees and expenses related to the filing of the foreclosure notice, and in having to spend time and effort away from work to attend to the foreclosure of the first mortgage.

16.   On or before December 24, 2009, Defendants Virtual Bank and Lydian retained the services of Defendants Terry LaRoche and Steve LaRoche to act as their agents for the collecting of the debt owed by Plaintiffs to Defendants. On December 24 or 25, 2009, Defendants Terry and Steve LaRoche came to Plaintiffs' Home and entered onto the premises without Plaintiffs' permission. Plaintiffs live in a gated community and Plaintiffs are informed and believe that Defendants Terry and Steve LaRoche were not given permission by others to enter the community. Plaintiffs themselves never gave them permission to enter the community. Defendants Terry and Steve LaRoche represented to Plaintiff Charles Elfsten that they were retired Los Angeles City police officers and that Plaintiffs should execute a "Deed in Lieu of Foreclosure" in favor of said Defendants Virtualbank and Lydian. Plaintiff

Charles Elfsten told Defendants Steve and Terry LaRoche that he was about to sit down to dinner with his houseguests, and that he thought it was inappropriate that they were approaching him during the holiday. While at the Home, and in full view of Plaintiff Charles Elfsten, Defendant Steve LaRoche pulled back his coat and showed and brandished to Mr. Elfsten his firearm, and Defendant Terry LaRoche opened her purse and showed and brandished to Mr. Elfsten her firearm. When each Defendant brandished their firearm, Defendants Steve and Terry LaRoche were aware that Marie Elfsten and other house guests could clearly see them and their actions through the window. Plaintiff Marie Elfsten through the window saw Defendant Terry LaRoche open her purse and Defendant Steve LaRoche pull back his coat (where she could see a gun holster). To avoid any further embarrassment, Plaintiff Charles Elfsten waited until after his houseguests left later that evening before discussing the threat with Marie Elfsten. At or about the time they brandished their firearms, in the communications between Defendants Steve and Terry LaRoche and Plaintiffs, by the words that were said and their body language, Defendants Steve and Terry LaRoche intended to communicate, and did communicate to Plaintiff Charles Elfsten words to the effect that some Physical harm could come to Plaintiffs if they did not sign over the Deed to their home, i.e. sign the Deed in Lieu of Foreclosure. At all times herein mentioned Defendents Steve and Terry LaRoche knew that Plaintiff Charles Elfsten would make his wife, Plaintiff Marie Elfsten, aware of these communications and of the brandishing of their weapons. On the same evening, Charles Elfsten advised his wife, Marie, of these statements. While Plaintiffs did not sign said deed, they suffered extreme emotional distress by the words and behavior of these armed persons.

The original Verified Compliant filed in this action mistakenly alleged that this event occurred on December 24, 2006, not 2009. The correct date is December 24 or 25, 2009, and the mistake in the year set forth in the original Verified Complaint was a typographical error. The original Verified Complaint was signed by Plaintiffs' first attorney on information and belief because Plaintiffs were not available to sign the verification. Plaintiffs' verbally told their first attorney the correct date prior to the signing of the Verified Complaint. However, when their first attorney's paralegal typed the Complaint, he mistyped the date. This typographical error was simply overlooked when Plaintiffs' first attorney reviewed, prior to signing, the verification on or about December 15, 2010. The error was discovered and corrected in the First Amended Verified Complaint filed on April 25, 2011, the Second Amended Complaint filed on July 8, 2011, the Third Amended Complaint filed on September 30, 2011, and in this Fourth Amended Complaint. It is clear to Plaintiffs that this event could not have occurred in 2006, as Plaintiffs were current with their payments in 2006, and of course no collection efforts were being made by Defendants Lydian and Virtualbank at that time, and so it is obvious now to Plaintiffs that Plaintiffs and their first counsel did not notice the original clerical error.

17.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned above, Defendants Virtualbank, Lydian, and Doug Jennings knew of the methods used by Defendants Terry LaRoche and Steve LaRoche, and their acts, as set forth above, and approved and ratified said acts and methods. Said Defendants Virtualbank, Lydian, and Doug Jennings had employed Defendants Steve and Terry LaRoche on over 20 prior occasions to obtain Deeds in Lieu of Foreclosure in California and were well aware of their methods and approved and ratified their methods.

18. On or about December 25, 2009, Defendants Virtualbank and Lydian increased Plaintiffs' payment under the first trust deed note (Exhibit A) by $512.37 a month. Plaintiffs are informed and believe that each month after December 2009, Defendants charged to Plaintiffs' account on said note said additional $512.37 per month, each month, continuing through the present date. In, or about, December 2009, Plaintiffs cannot recall the exact date, Plaintiffs were told by Zulines Gonzalez that the reason for said increase was because the Real Property taxes on Plaintiffs' home had increased by the same amount (i.e. $512.37 per month, which is $6,148.44 per year). At the time the statement was made, and at the time of the increase, and at each month of overcharge, said representation was false and known to be false by both Zulines Gonzalez and by Defendant Virtualbank and Defendant Lydian. In fact, at the time of the increase, at the time the representation was made, and on each date of the overcharge, Plaintiffs' taxes had not increased, and the representation was therefore false.

19. After said misrepresentation was made, and said overcharge was applied to Plaintiffs' account, in, or about, January or February 2010, Plaintiffs questioned the increase and contacted said Defendants, and Zulines Gonzalez in particular. In or about January or February 2010, the exact day cannot be recalled, Zulines Gonzalez represented that regardless of the situation with the taxes, the increase was being collected as a reserve against possible future late payments, and that this extra charge was allowed under the Loan Agreements. At the time the statement set forth in this paragraph was made, and at the time of the increase, and at each month of overcharge, said representation was false, and known to be false by both Zulines Gonzalez and by Defendant Virtualbank and Defendant Lydian. In fact, at the time of the increase, at the time said representation was made, and on each date of the overcharge,

said increase over-charge was not allowed under the terms of the Loan Agreements, or at law, or for any other reason, and said representation was therefore false.

20. On January 1, 2010, Defendant Doug Jennings, an employee and agent of Defendants Virtualbank and Lydian, threatened Plaintiff Charles A. Elfsten by stating to him that, "if you hire an attorney, Virtualbank and I will bury you" and "when are you moving out?" These statements were done intentionally by Doug Jennings, and done with the intent to cause extreme emotional distress to Plaintiffs. These statements, both by themselves and when taken together with all of the above acts of Defendants, as set forth above and described below, did in fact, cause extreme emotional distress to Plaintiffs.

21. In February 2010 and March 2010, Plaintiffs were charged $1,038.80, each month, by Defendants Virtualbank and Lydian, as late fees. These extra charges were, and are, far in excess of any late fees allowed under the Loan agreement, or by law.

22. On April 07, 2010, Defendants Virtualbank and Lydian attempted to withdraw $31,757.21 from Plaintiffs' personal bank account without Plaintiffs' permission, and in fact, after Plaintiffs advised Defendants not to do so. While Plaintiffs had made plans for a payment to Defendants on March 31, 2010, Plaintiffs expressly stated to Defendants on March 31, 2010 that the funds would not be available until the next week, around April 8, 2010. Defendants nevertheless proceeded to attempt to withdraw the funds on April 5, 2010, against Plaintiffs direct instructions, and then again Defendants made a similar attempt after April 7, 2010, and prior to April 15, 2010. Said intentional acts by Defendants caused Plaintiffs additional fees from their bank, as well as extreme emotional distress and general damages. On or about April 15, 2010, the funds became available, as Plaintiffs had told Defendants they would be, and on or about that time, Plaintiffs made the payment in full to

Defendants.  On May 6, 2010, Plaintiffs attempted to complain to Defendants Virtualbank and Lydian about their attempt to withdraw the funds without Plaintiffs' permission. On that same day, Defendant Doug Jennings, as agent of Defendants Virtualbank and Lydian, stated to Plaintiff Charles A. Elfsten that he was a flake with a propensity to bounce checks. Plaintiff Charles A. Elfsten has never bounced a check, and Doug Jennings knew this, and Defendants Virtualbank and Lydian had no authority to withdraw funds from Plaintiffs' account without the permission of the Plaintiffs.  At the time the statement was made, Defendants had no reason to believe the statement was true, and Defendants made the statement with the intent to cause Plaintiffs extreme emotional distress.  As a result of said statement, alone and together with the other statements and acts and omissions of Defendants, as set forth above, Plaintiffs did suffer extreme emotional distress.  In addition, Plaintiffs are informed and believe, and on that basis allege that on or about May 6, 2010, Defendant Doug Jennings told third parties that Plaintiff Charles A. Elfsten was a flake with the propensity to bounce checks.

23.     On or about April 28, 2011, Plaintiffs wanted to become current on their first mortgage and requested that Defendants Virtualbank and Lydian provide Plaintiffs with an accounting of the amount currently due on the loan under the terms of the Loan Agreements and under the law.  This request was not made in connection with any litigation, but was made as part of Plaintiffs' separate rights to receive information regarding the status of, and payments due on their loan.  In response to this request, on or about April 28, 2011, Defendants Virtualbank and Lydian, by and through a letter from their attorney provided Plaintiffs with an accounting statement regarding the amounts that were owed under the terms of the Loan Agreements.  The accounting statement purported to be a factual statement

regarding the status of the account in no way connected with any litigation. Attached hereto as "Exhibit C" is a copy of the accounting statement, which is contained in the first half of the letter. The accounting statement in response to Plaintiffs' request was solely intended to be an accurate accounting of what was owed. In addition, the second half of the letter was not intended as an offer of any settlement, nor a statement in any manner made in furtherance of, or in connection with, any litigation. It was the only way Plaintiffs were able to obtain information on what was due, as Defendants would no longer speak directly to Plaintiffs, but would provide information of any type only through their attorneys. Plaintiffs reasonably relied on the representations set forth in Exhibit C from said Defendants of the amounts then due (namely the amount of $59,984.33). Plaintiffs' reliance was even more reasonable in that Plaintiff was aware there was pending litigation with Defendants regarding the banks past acts in connection with the loan, and Plaintiffs reasonably believed the Defendants would be extra careful in providing Plaintiffs accurate information regarding the current status of the loan. In reliance on said accounting statement, and with the time pressure of an upcoming foreclosure, Plaintiffs made a payment of $59,984.33 on April 29, 2011 to bring their first mortgage current. After making said payment of $59,984.33, it was later discovered that the statement of the amount due was false, and the amount claimed to be due was grossly exaggerated by over $10,000. In particular, the amounts stated for payment on the first mortgage, the late fees, and the attorney's fees were all over stated, and known to be overstated by the employees of said Defendants who caused the accounting statement to be transmitted to Plaintiffs (the names of these employees are currently unknown to Plaintiffs). Said reliance was reasonable in that Defendants Virtualbank and Lydian held themselves out as being knowledgeable in these matters and in the administration of the subject loan; and

Defendants had notice of the claimed fraud, and Plaintiff had no reason to believe that they were not being told the truth at the time.

24.     Up to April 29, 2011, Defendants Virtualbank and Lydian have also charged Plaintiffs $2,989.33 for the legal costs and fees related to the foreclosure process.  In addition, up to April 29, 2011, Plaintiffs have been charged an additional amount of $5,562.15 in legal fees (for a total of legal fees charged in of $8,551.48.)  Defendants Virtualbank and Lydian refuse to explain why these legal fees are being charged to Plaintiffs, and why the fees are so exorbitant.  Said fees are significantly above what is allowed under the Loan Agreement and by law.  Nonetheless, in reliance on the representations made by Defendants as set forth above, and in particular as set forth in the paragraphs 18, 19, and 23, on April 29, 2011 Plaintiffs paid said fees.

25.     As a result of the overcharges, false statements, and false information, made by Defendants Virtualbank, Lydian, Zulines Gonzalez, and Doug Jennings, in their various demands for payment, including but not limited to, the proper amounts needed to reinstate the loan, and the wrongful acts, as set forth above, on January 10, 2011, Plaintiff Charles Elfsten was forced to file bankruptcy in order to stay foreclosure on the Property and save the family's Home.  On April 14, 2011, Plaintiffs' bankruptcy was dismissed.  As a result of the overcharges, false statements, and false information made by Defendants Virtualbank, Lydian, Zulines Gonzalez, and Doug Jennings, in their various demands for payment, including but not limited to, the proper amounts needed to reinstate the loan, and the wrongful acts, as set forth above, which occurred before April 26, 2011, on or about April 28, 2011, Plaintiff Marie Elfsten was forced to file bankruptcy in order to stay foreclosure on the Property and save the family Home.

26. On April 29, 2011 Plaintiffs paid off all back payments, with interest and late fees, which Defendants Lydian and Virtualbank claimed Plaintiffs owed on the First Deed of Trust. Said payment was substantially in excess of the actual amounts owed to Defendants Virtualbank and Lydian at that time, and Plaintiffs were forced to make the over-payment as the only reasonable way to stop the foreclosure proceeding.

## FIRST CAUSE OF ACTION

**(Breach of Contract by Charles A. Elfsten and Marie A. Elfsten against Defendants Lydian Private Bank, Virtual Bank, Sabadell United Bank N.A., and Does 4 through 20, inclusive, each of them)**

27. Plaintiffs reallege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 26 above.

28. The Loan Agreements contain an implied covenant of good faith and fair dealing.

29. Defendant Banks, starting in December 2009 and through the present date, have breached the Loan Agreements, including each of the acts set forth above, each of the overcharges by Defendants, by each and every inclusion of the overcharges in any statement of the balance, and by accepting payment of, and for said overcharges, and by refusing to return or refund said overcharges, and by proceeding with filing the Notice of Default based in part on said over charges, and based on the breaches of the agreement as alleged above. Said acts and overcharges also constitute a breach of the implied covenant of good faith and fair dealing.

30. Defendant Banks breached the Loan Agreements by charging Plaintiffs fees that are different than, and in conflict with, the fees set forth in the Loan Agreement for the First Mortgage (Exhibit A).

31.     As a direct and proximate result of said breaches of the Loan Agreements committed by Defendants Virtualbank, Lydian, and Sabadell, each of them, Plaintiffs have sustained damages in an amount to be proven at the time of trial.

32.     In addition to the above mentioned breaches of the Loan Agreements, Defendants Virtualbank and Lydian, through their agent and employee Defendant Gonzalez, by the statements made by Gonzalez on November 20, 2009, and by the acts of Plaintiffs in reliance thereon, including the payment on the second trust deed and Plaintiffs' refraining from paying current the first mortgage, Defendants and Plaintiffs entered into a verbal modification to the Loan Agreements.  This verbal modification was to the effect that Defendants Virtualbank and Lydian would not take any action to foreclose on the first trust deed, including recording a Notice of Defualt ("NOD"), at any time prior to December 31, 2009.

33.     The statements and resulting reliance by Plaintiffs also constituted a waiver by Defendant Banks of any right to file an NOD on the first mortgage before December 31, 2009.  Defendants Virtualbank and Lydian breached the Loan Agreements directly (because of the waiver) and as modified by filing the NOD of December 9, 2009.

34.     In addition to the above mentioned breaches of the Loan Agreements, Defendants Virtualbank and Lydian, through their agent and employee Defendant Gonzalez, by the statements made by Gonzalez on December 1, 2009, and by the acts of Plaintiffs in reliance thereon, including Plaintiffs' refraining from paying current the first mortgage, Defendants and Plaintiffs entered into a verbal modification of the Loan Agreements.  This verbal modification was to the effect that Defendants Virtualbank and Lydian would not take any

action to foreclose on the first trust deed, including filing an NOD, at any time prior to December 31, 2009.

35. The statements and resulting reliance by Plaintiffs also constituted a waiver by Defendant Banks of any right to file an NOD on the first mortgage before December 31, 2009. Defendants Virtualbank and Lydian breached the Loan Agreements directly (because of the waiver) and as modified, by filing the NOD on December 9, 2009.

36. As a direct and proximate result of said breaches of the Loan Agreements, directly and as modified, by Defendants Virtualbank, Lydian, and Sabadell, each of them, on December 9, 2009, Plaintiffs have sustained damages to their credit and in the cost of fees and having to hire an attorney, in an amount to be proven at the time of trial.

**SECOND CAUSE OF ACTION**

**(Declaratory Relief by Charles A. Elfsten and Marie A. Elfsten, against Defendants Sabadell United Bank N.A., Lydian Private Bank, and Virtualbank, and Does 4 through 20, inclusive, each of them)**

37. Plaintiffs, Charles A. Elfsten and Marie A. Elfsten, reallege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 36 above.

38. From December 2009 to the present date, Defendant Banks have claimed different interest rates, mortgage payments, late fees, attorney's fees, and other charges regarding the first and second mortgages under the Loan Agreements (Exhibit A and Exhibit B) than the amounts claimed to be due by Plaintiffs, including but not limed to, the overcharges as set forth above.

39. Plaintiffs believe that the charges and accounting of said Defendants are false and incorrect, but said Defendants continue to maintain that their charges are accurate and correct.

40. Plaintiffs desire a judicial determination of, and accounting of, what charges and amounts are owed, and have been owed under the Loan Agreements, and of Plaintiffs rights and duties, and a declaration as to the correct, proper, and legal amount of all interest, attorney's fees, foreclosure fees, mortgage payments, late payments, and amounts due.

41. A judicial declaration is necessary and appropriate at this time under the circumstances in order to avoid any further controversy regarding the specific amounts due on the Loan Agreements (Exhibit A and Exhibit B) and the interest rate, mortgage payment, late payments, charges, attorney fees, and other charges, made in reference to these instruments, and in order to avoid further foreclosure processes, as well as to avoid any future emotional distress caused thereby.

**THIRD CAUSE OF ACTION**

**(Misrepresentation by Charles A. Elfsten and Marie A. Elfsten, against Defendants Sabadell United Bank N.A., Lydian Private Bank, Virtualbank, Zulines Gonzalez, and Does 4 through 20, inclusive, each of them)**

42. Plaintiffs, Charles A. Elfsten and Marie A. Elfsten, reallege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 41 above.

43. Defendant Banks, by and through their employee, namely Zulines Gonzalez , made certain statements and representations regarding the Loan Agreements, payments, status of accounting, and other matters related thereto, as set forth in paragraphs 15, 18, 19, and 23.

44.     Defendant Zulines Gonzalez stated to Plaintiffs that they should pay current their second mortgage and not to be concerned about paying current the first mortgage.  When Plaintiff Charles Elfsten asked Defendant Gonzalez, "shouldn't I pay current the first," he was told that if they paid current their second mortgage, then the Defendants would "work with them" in bringing their first mortgage current.  Further, Defendant Gonzalez said words to the effect that so long as the second mortgage was made current, the first mortgage can be paid current in a reasonable time, after Plaintiffs had another closing, and that as long as they paid current the second mortgage, that for a reasonable time Defendants would not take action to foreclose on their first mortgage, as set forth in paragraph 15.  Plaintiffs are now informed and believe that Defendant Gonzalez knew at the time she made the statements that Defendants Virtualbank and Lydian were in fact planning to foreclose on Plaintiffs property regardless of whether they paid current their second mortgage.

Further, on December 1, 2009, Defendant Gonzalez specifically told Plaintiffs they had until the end of the December 2009 to bring current the amount due on the first mortgage, as Lydian and Virtual had no intention of taking any action to foreclose on the first mortgage before the end of December.  This affirms her November 20 statements, and affirms that both she and Plaintiffs understood that her reference on November 20 to reasonable time meant until of the end of December 2009.  Plaintiffs are now informed and believe that Defendant Gonzalez knew at the time she made the statements that Defendants Virtualbank and Lydian were in fact planning to foreclose on Plaintiffs' property regardless of Defendants' statements.

45.     Defendant Banks, by and through said employee, made each and every above referenced statement and representation knowing it was false, and with the intent to induce

Plaintiffs to pay current their second mortgage, and in turn allowing them to foreclose on Plaintiffs' first mortgage.

46. Plaintiffs believed the statements and representations set forth above because Defendants Lydian, Virtualbank, and Zulines Gonzalez, had the authority to speak on whether they would or would not be foreclosing on Plaintiff. In reliance on the November 20, 2009 referenced statements and representations, at the time set forth above, on November 20, 2009, Plaintiffs paid current their second mortgage and from November 20, 2009 until after December 10, 2009 did not pay current their first mortgage. In reliance on the December 1, 2009 statement, Plaintiffs did not pay current and made no arrangement to bring current the first mortgage until after December 10, 2009.

47. Plaintiffs would have obtained the funds necessary to pay current their first mortgage had they known that Gonzalez's statements and representations were false.

48. As a direct and proximate result of said misrepresentations of Defendants Lydian, Virtualbank, Sabadell, and Zulines Gonzalez, Plaintiffs have sustained damages in an amount to be proven at the time of trial.

49. In April of 2011, Defendants Lydian and Virtualbank sent Plaintiffs an accounting of the amounts due on their loans (Exhibit C), as set forth in Paragraph 23.

50. Defendants Lydian and Virtualbank sent Exhibit C knowing it was false, and with the intent to induce Plaintiffs to pay amounts that were in fact not due under the Loan Agreements, as set forth above.

51. Plaintiffs believed the statements and representations because Defendants Virtualbank and Lydian are professionals in the lending industry who posses certain knowledge that Plaintiffs do not have about lending, interest rates, and the calculation of taxes. Further,

Defendants were aware of litigation regarding their past overcharges when they sent Plaintiffs Exhibit C, so Plaintiffs believed that Defendants would be extra careful in providing an accounting statement and that said statement was truthful. In reliance on Exhibit C, Plaintiffs made payments over and above what was required under the terms of the Loan Agreements or at law.

52. Plaintiffs would not have paid amounts over and above what was due under the Loan Agreements, or at law, had they known that Exhibit C was false.

53. As a direct and proximate result of said misrepresentations committed by Defendants, Sabadell, Lydian, and Virtualbank, Plaintiffs have sustained damages in an amount to be proven at the time of trial.

54. The acts and omissions of Defendants Virtualbank, Lydian, Sabadell, Zulines Gonzalez, were done intentionally and with the intent to cause direct harm to Plaintiffs and were despicable, and Plaintiffs are therefore entitled to Punitive Damages over and above their actual damages in an amount to be determined at the time of trial.

**FOURTH CAUSE OF ACTION**

**(Negligent Misrepresentation by Charles A. Elfsten and Marie A. Elfsten, against Defendants Sabadell United Bank N.A., Lydian Private Bank, Virtualbank, Zulines Gonzalez, , and Does 4 through 20, inclusive, each of them)**

55. Plaintiffs, Charles A. Elfsten and Marie A. Elfsten, reallege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 54 above.

56. Defendant Banks, by and through their employees, namely Zulines Gonzalez, made certain statements and representations regarding the Loan Agreements, payments, status of accounting, and other matters related thereto as set forth in paragraphs 15, 18, 19, and 23.

57.     Defendant Zulines Gonzalez told Plaintiffs on or about November 20, 2011 that they should pay current their second mortgage and not to be concerned about paying current the first mortgage.  When Plaintiff Charles Elfsten asked Defendant Gonzalez, "shouldn't I pay current the first," he was told that if they paid current their second mortgage, then the Defendants would "work with them" in bringing their first mortgage current.  Further, Defendant Gonzalez said words to the effect that so long as the second mortgage was made current, the first mortgage can be paid current in a reasonable time, after Plaintiffs had another closing, and that as long as they paid current the second mortgage, that for a reasonable time Defendants would not take action to foreclose on their first mortgage, as set forth in paragraph 15.

Further, on December 1, 2009, Defendant Gonzalez specifically told Plaintiffs they had until the end of the December 2009 to bring current the amount due on the first mortgage, as Lydian and Virtual had no intention of taking any action to foreclose on the first mortgage before the end of December.  This affirms her November 20 statements, and affirms that both she and Plaintiffs understood that her reference on November 20 to reasonable time meant until of the end of December 2009.

58.     If not done intentionally, Defendant Zulines Gonzalez made each and every above referenced statement and representation negligently, without making any effort to verify their truth, and should have known these statements were both false and misleading.

59.     Plaintiffs believed the statements and representations because Defendants Virtualbank and Lydian are professionals in the lending industry who posses certain knowledge that Plaintiffs do not have about lending, interest rates, and the calculation of taxes.  Further, Defendants were aware of litigation regarding their past overcharges when they sent Plaintiffs

Exhibit C, so Plaintiffs believed that Defendants would be extra careful in providing an accounting statement and that said statement was truthful. In reliance on Exhibit C, Plaintiffs made payments over and above what was required under the terms of the Loan Agreements or at law.

60.     Plaintiffs would have obtained the funds necessary to pay current their first mortgage had they known that Gonzalez's statements and representations were false.

61.     As a direct and proximate result of the negligent misrepresentations committed by Defendants Lydian, Virtualbank, and Zuliness Gonzalez, Plaintiffs have sustained damages in an amount to be proven at the time of trial.

62.     In April of 2011, Defendants Lydian and Virtualbank sent Plaintiffs a written statement of amounts due on their loans (Exhibit C), as set forth in Paragraph 23.

63.     If not done intentionally, Defendants Virtualbank and Lydian, made Exhibit C negligently, without making any effort to verify its truth, and should have known its statements were both false and misleading.

64.     Plaintiffs believed the statements and representations because Defendants Virtualbank and Lydian are professionals in the lending industry who posses certain knowledge that Plaintiffs do not have about lending, interest rates, and the calculation of taxes. Further, Defendants were aware of their past overcharges when they sent Plaintiffs Exhibit C, so Plaintiffs believed that said statement was truthful. In reliance of the above referenced statements and representations, Plaintiffs made payments over and above what was required under the terms of the Loan Agreements or at law.

66.     Plaintiffs would not have paid amounts over and above what was due under the Loan Agreements, or at law, had they known that Exhibit C was false.

67. As a direct and proximate result of said misrepresentations committed by Defendants Sabadell, Lydian, and Virtualbank, Plaintiffs have sustained damages in an amount to be proven at the time of trial.

## FIFTH CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress by Charles A. Elfsten and Marie A. Elfsten, against Defendants Sabadell United Bank N.A., Lydian Private Bank, Virtualbank, Zulines Gonzalez, Doug Jennings, Terry LaRoche, Steve LaRoche and Does 4 through 20, inclusive, each of them)**

68. Plaintiffs, Charles A. Elfsten and Marie A. Elfsten, reallege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 67 above.

69. Each of the above stated actions, including threats, intimidation, misrepresentations, false accountings, and overcharges, by themselves, and cumulatively taken together, were part of an overall series of acts intended to cause Plaintiffs extreme emotional distress. As set forth above, these acts occurred in, or about November 2009, on December 9, 2009, on December 24 or 25, 2009, on December 25, 2009, in January and February 2010, in March, 2010, in April 2010, and monthly all through April 2011.

70. These actions, as set forth above, individually and taken together, were extreme and outrageous, and known by Defendants to likely cause Plaintiffs, and each of them, severe and extreme emotional distress.

71. These actions were done intentionally to cause Plaintiffs extreme and severe emotional distress and to scare Plaintiffs into paying Defendants sums which Defendants knew were not due, and done to scare Plaintiffs into signing over their home to Defendants, a home that Defendants knew had substantial equity.

72. Each of these said actions individually, and cumulatively, did in fact cause Plaintiffs to suffer from extreme and severe emotional distress over the impending loss of their home, in Plaintiffs' emotional reaction to the threat of bodily harm, in the prospect of having to file bankruptcies, and in each and every other emotional component that comes with the Defendants' ongoing and relentless attempts to obtain overcharges and attempts to take away Plaintiffs' Home.

73. As a direct and proximate result of the intentional infliction of extreme and severe emotional distress by Defendants Virtualbank, Lydian, Doug Jennings, Sabadell, Zulines Gonzalez, Terry LaRoche, and Steve LaRoche, Plaintiffs have sustained damages in an amount to be proven at the time of trial.

74. The acts and omissions of Defendants Virtualbank, Lydian, Sabadell, Doug Jennings, Zulines Gonzalez, Terry LaRoche, and Steve LaRoche, were done intentionally and with the intent to cause direct harm to Plaintiffs and were despicable, and Plaintiffs are therefore entitled to Punitive Damages over and above their actual damages in an amount to be determined at the time of trial.

## SIXTH CAUSE OF ACTION

**(Negligence by Charles A. Elfsten and Marie A. Elfsten, against Defendants Lydian Private Bank, Virtualbank, Sabadell United Bank N.A., Zulines Gonzalez, Doug Jennings, Terry LaRoche, Steve LaRoche, and Does 4 through 20, inclusive, each of them)**

75. Plaintiffs, Charles A. Elfsten and Marie A. Elfsten, reallege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 74.

76.     The actions, as set forth above, if not intentional, were acts giving rise to extreme emotional distress and were at a minimum negligent. Said Defendants owed a duty to Plaintiffs to not engage in, or do, said acts because Defendants knew or should have known that said acts individually and cumulatively would cause the effect of extreme emotional distress, and it was foreseeable that said acts and omissions would cause such harm to Plaintiffs, and it was almost certain that the acts of Defendants did in fact cause said harm to Plaintiffs. Further, public policy weighs in favor of Plaintiffs, as borrowers, to protect them against any predatory lending practices of the lender of the type set forth in reference to said acts giving rise to the extreme emotional distress.

77.     These actions were done with a reckless disregard of the fact that they would cause the Plaintiffs extreme and severe emotional distress and cause Plaintiffs to overpay money to Defendants as set forth above.

78.     Each of these said actions individually, and cumulatively, did in fact cause Plaintiffs to suffer from extreme and severe emotional distress over the impending loss of their home, in considering the threat of bodily harm to each Plaintiff and to his or her spouse, in the prospect of having to file bankruptcies, and in each and every other emotional component that comes with the Defendants' ongoing and relentless attempts to obtain overcharges and attempts to take away Plaintiffs' Home.

79.     As a direct and proximate result of said negligent actions by Defendants Virtualbank, Lydian, Doug Jennings, Zulines Gonzalez, Terry LaRoche, and Steve LaRoche, Plaintiffs have sustained damages in an amount to be proven at the time of trial.

SEVENTH CAUSE OF ACTION

**(Unfair Debt Collection Practices by Charles A. Elfsten and Marie A. Elfsten, against Defendants Lydian Private Bank, Virtualbank, Sabadell United Bank N.A., and Does 4 through 20, inclusive, each of them)**

80. Plaintiffs, Charles A. Elfsten and Marie A. Elfsten, reallege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 79 above.

81. Defendant Banks, by and through their agents and employees, have used inappropriate and illegal methods in the collection of its debt in breach of the Loan Agreements, including, but not limited to, sending armed persons to threaten Plaintiffs, verbally threatening Plaintiffs over the phone, attempting to withdraw funds from Plaintiffs' bank account without Plaintiffs' permission, and making false statements to Plaintiffs as alleged above.

82. As a direct and proximate result of the violation of both the California Unfair Debt Collection Practices and the Federal Unfair Debt Collection Practices committed by Defendants Virtualbank, Sabadell, and Lydian, each of them, Plaintiffs have sustained damages in an amount to be proven at the time of trial.

83. The acts and omissions of Defendants Virtualbank, Lydian, and Sabadell, were done with reckless disregard for the emotional harm that could result from these acts and with reckless disregard to the harm to Plaintiffs and were despicable, and Plaintiffs are therefore entitled to Punitive Damages over and above their actual damages in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

ON THE FIRST CAUSE OF ACTION

1.  For general damages in an amount to be established at trial of the within action;

2.  For special damages according to proof.

ON THE SECOND CAUSE OF ACTION

3.  For judicial determination of Plaintiffs' rights and duties, and a declaration as to the correct, proper, and legal amount of all interest, attorney's fees, foreclosure fees, mortgage payments, late payments, and amounts due.

ON THE THIRD CAUSE OF ACTION

4.  For general damages in an amount to be established at trial of the within action;

5.  For special damages according to proof.

6.  For Punitive Damages according to proof.

ON THE FOURTH CAUSE OF ACTION

7.  For general damages in an amount to be established at trial of the within action;

8.  For special damages according to proof.

ON THE FIFTH CAUSE OF ACTION

9.  For general damages in an amount to be established at trial of the within action;

10. For special damages according to proof.

11. For Punitive Damages according to proof.

ON THE SIXTH CAUSE OF ACTION

12. For general damages in an amount to be established at trial of the within action;

13. For special damages according to proof.

ON THE SEVENTH CAUSE OF ACTION

14. For general damages in an amount to be established at trial of the within action;

15. For special damages according to proof.

16. For Punitive Damages according to proof.

ON ALL CAUSES OF ACTION

17. For attorneys fees to the extent that they may be allowed by law or to the extent that may be allowed under the contracts.

18. For costs of suit and for such other and further relief as the Court may allow.

Dated: January 26, 2012

Law offices of L. Scott Karlin

By: [signature]
Michael J. Karlin
Attorney for Plaintiffs,
Charles A. Elfsten and Marie A. Elfsten

Loan Number W3010184

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| FEBRUARY 10, 2003 | PALM BEACH GARDENS , | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

40 CHANDON UNIT 31 , NEWPORT COAST, CALIFORNIA 92657
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 650,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is VIRTUALBANK, A DIVISION OF LYDIAN PRIVATE BANK, A FEDERAL SAVINGS BANK . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on APRIL 1 , 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 1 , 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3801 PGA BOULEVARD, 7TH FLOOR, PALM BEACH GARDENS, FLORIDA 33410 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,690.63 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the 1st day of MARCH ,2008 , and on that day every 6 month thereafter. Each date on which my interest rate could change is called a "Change Date."

EXHIBIT A

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than 5.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage point(s) ( 2.000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 11.500 %. My interest rate will never be less than 5.500%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded

to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how

and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| (Seal) CHARLES A. ELFSTEN -Borrower | (Seal) MARIE A. ELFSTEN -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |

[Sign Original Only]

# ADJUSTABLE RATE RIDER

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

Loan Number: W3010184

THIS ADJUSTABLE RATE RIDER is made this 10th day of FEBRUARY , 2003 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to VIRTUALBANK, A DIVISION OF LYDIAN PRIVATE BANK, A FEDERAL SAVINGS BANK ("Lender") of the same date and covering the property described in the Security Instrument and located at:

40 CHANDON UNIT 31 , NEWPORT COAST, CALIFORNIA 92657
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 5.500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the 1st day of MARCH, 2008 , and on that day every 6 month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01
Page 1 of 3
DocMagic eForms 800-649-1362
www.docmagic.com

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than 5.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 11.500 %.
My interest rate will never be less than 5.500%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01
DocMagic eForms 800-649-1362
www.docmagic.com
Page 2 of 3

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

(Seal) CHARLES A. ELFSTEN -Borrower

(Seal) MARIE A. ELFSTEN -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family–Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01 Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

# VirtualBank, a Division of Lydian Private Bank Home Equity Line Credit Agreement

| Borrower's Name<br>CHARLES A. ELFSTEN | Loan Number<br>00000000013175 |
|---|---|
| Co-Borrower's<br>MARIE A. ELFSTEN | Agreement Date 04-19-2005 Maturity Date 5-03-2035 |
| Credit Limit 325,000.00 | Payment Date 05-25-2005 |
| Index Margin +.50<br>Wall Street Journal Prime 5.75% | Initial Rate 6.250 |
| Draw Period 120 Repayment Period 240 | ANNUAL PERCENTAGE RATE 6.250 |
| Property Address<br>40 CHANDON, UNIT 31, NEWPORT COAST, CALIFORNIA 92657 | |

Definitions - As used in this Agreement, the terms have the following meanings.

Agreement - Agreement refers to this Home Equity Line Agreement, and any extensions, modifications, renewals and substitutions of it.

I, "me" and "my" refer to each borrower and co-borrower who signs this agreement, individually and together. "You" and "Your" refer to the Lender named above, and any successors and assigns or any person or company that acquires and interest in the Line of Credit.

I understand that the date shown above is the date this agreement is prepared by you. This agreement is effective and is considered made when you approve my credit and I have properly signed it, subject to any right of rescission under Applicable law.

Home Equity Line of Credit Loans
I may request Advances from my Credit Account by writing a Home Equity Line of Credit check. I may use my account when I receive notice from you that my Credit Account has been established. Subsequent to my initial advance each advance must be at least $250.00 ("Minimum Draw Requirement").

If the amount available to me from this line of credit is less than the Minimum Draw Requirement shown above, then you may, at your option, advance a loan for less than the Minimum Draw Requirement.

Credit Limit
My Home Equity Line of Credit is a revolving line of credit.

My credit limit is disclosed above. I may not request an Advance that would cause the unpaid principal balance to exceed the Credit Limit. You will not pay any item that would exceed the amount of the Credit Limit. You may, at your option, grant the request. If you do make the Advance, it does not mean that the Credit Limit has been raised.

Promise to Pay
For value received, I promise to repay all sums owed under this Home Equity Line of Credit Agreement to you or to your order, at your address, or at such other location as you may designate, the principal amount of $325,000.00 plus finance charges and all other amounts due under this Agreement until this Agreement matures or this obligation is accelerated.

If this line of credit is a joint account, I acknowledge that each person who signs this agreement is jointly and severally liable for the full unpaid loan balance, all finance charges and all other charges outstanding under this Agreement.

Agreement
The "Maturity Date" of this Agreement is MAY 3, 2035. I understand and agree that my unpaid loan balance, unpaid finance charges and any other charges authorized in this Agreement, are payable to you in full on the Maturity Date. At that time you may, but are not obligated to, refinance my Line of Credit. If I am allowed to refinance, I understand that I may have to pay all of the closing costs associated with my new loan.

EXHIBIT B

Draw Period
The Draw Period is the period during the term of this Agreement that I may request Advances. The Draw Period is [illegible] months and begins on the Agreement Date. During the Draw Period, my monthly payments will equal the accrued interest and any fees and/or amounts past due on the last day of the billing cycle. During my draw period, the Minimum Payments will not reduce the Principal Balance on my Line of Credit.

Repayment Period
The repayment period will continue for [illegible] months after the Draw period. I may not request Advances during the Repayment Period. During the Repayment Period, my monthly payments will equal the unpaid principal balance accrued interest and fees and/or amounts past due divided by the remaining number of scheduled payments.

Payments
Payments are due as shown on your monthly statement. On or before each Payment Date, I agree to make a payment of at least the Minimum Payment Amount plus any past due regular monthly payment(s) and all other charges then due on my Line of Credit. If the balance on my Line of Credit on a payment date is less than the Minimum Payment amount, I must pay only the balance.

Payments and other credits will be applied first to any charges I owe other than principal and accrued interest, then to any accrued interest that is due, and finally to the principal unless otherwise agreed or required by applicable law.

Late charges will not be assessed on any payment only when the delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment.

Computation of FINANCE CHARGES
Finance charges will begin to accrue immediately when you make an Advance and continue until the outstanding balance on such Advance is paid in full. To calculate the finance charge for a Billing Cycle, the daily periodic rate is multiplied by the principal balance of my Line of Credit each day. To calculate the principal balance for each day, you first take my Line of Credit balance at the beginning of each day and subtract the unpaid finance charges that are due. Then you subtract the portion of any payments or credits that apply to the repayment of my loan and you add any new advances made that day. The final figure gives you the Principal Balance.

Periodic Rate
The daily periodic rate is a variable rate and may increase or decrease based on the Index. The periodic rate is determined by adding or subtracting a Margin to or from the Prime Rate and dividing the result by 365 or 366 in leap years which corresponds to an ANNUAL PERCENTAGE RATE. The initial ANNUAL PERCENTAGE RATE, the Index, the initial periodic rate and the Margin are disclosed above.

The ANNUAL PERCENTAGE RATE will never be more than 18% or maximum allowed by law whichever is less. Your rate will never decrease below [0.00%.

Variable Rate
The line has a variable rate feature and the ANNUAL PERCENTAGE RATE (corresponding to the periodic rate) and the minimum payment can change as a result. The ANNUAL PERCENTAGE RATE includes interest and not other costs. It will always be the value of the Index plus/minus the Margin on my Line of Credit. The Index is the highest Prime Rate as published in *The Wall Street Journal* "Money Rates" table.

The Index rate increase or decrease will take effect on the first day of every month. The ANNUAL PERCENTAGE RATE can increase or decrease every (30) days, after remaining fixed for (30) days. If the Index changes more frequently than the annual percentage rate, you will use the Index value in effect on the day you adjust my annual percentage rate to determine the new annual percentage rate.

Fees and Charges Associated with Your Line of Credit
I agree to pay certain fees and charges to open and maintain my Line of Credit.

1. Late Charges - If my payment is more than 15 days late, I will be charged 5.00% of the payment amount. I will pay this amount only once for each late payment.
2. Non-Sufficient Fund Fee - I agree to pay $25.00 for each check, negotiable order of withdrawal or draft I issue in connection with this Line of Credit that is returned because it has been dishonored.
3. Over Limit Fee - I agree to pay an over limit fee of $25.00 if I request and receive advances such that my Line of Credit balance exceeds my Credit Limit.

4. Stop Payment Fee - I agree to pay a stop payment fee of $25.00 if I request you to stop payment on an item I issued in connection with this Line of Credit.

Security
This line of Credit is secured by a separate security agreement (Security Deed or Deed of Trust) which was signed in connection with this Agreement, on the property, as further described in the Security Agreement which is located at:

40 CHANDON, UNIT 31, NEWPORT COAST, CA. 92657

Governing Law
This Agreement is governed by the laws of the State of Florida and federal law. The law of jurisdiction where you are located, where the property is located, or where I am located may also apply.

Default
You can terminate my Line of Credit account if any of the following occur:

1. I engage in fraud or material misrepresentation in connection with the Line of Credit.
2. I failed to make a payment as required under this agreement.
3. My action or inaction adversely affects the Property or your rights in the Property included but not limited:
   a) Failure to maintain the Property properly insured.
   b) Transfer the Property.
   c) Use the Property for illegal purposes.
   d) Failure to pay property taxes and assessments when due.
   e) Failure to maintain the Property or use of the Property in a destructive manner.
   f) All or part of the Property is taken by condemnation or eminent domain.
   g) I am in default in any mortgage or lien on the Property.
   h) Death of all borrowers and co-borrowers who signed this Agreement.

To the extent permitted by law, on or after Default, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement. Expenses include, but are not limited to, attorneys' fees of 10% of the Principal sum due or a larger amount as the court judges as reasonable and just, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Agreement. All fees and expenses will be secured by the Property I have granted to you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

Suspension of Advances and Reduction of Credit Limit
You may reduce my Credit Limit or prohibit me from obtaining additional advances if:

1. The value of the Property declines significantly below the appraised value for purposes of this Line of Credit.
2. You reasonably believe that I will not be able to meet the repayment requirements set forth in the Agreement due to a material change in my financial circumstances.
3. I am in default of a material obligation in this Agreement or in the Security Instrument which includes but is not limited to, my obligation to provide you with information and/or documentation you feel you need to assess my financial condition.
4. Government action prevents you from imposing the ANNUAL PERCENTAGE RATE provided for in this Agreement.
5. Government action impairs the Security interest such that the value of the interest is less than 120% of my Credit Limit
6. A regulatory agency has notified you that the continued advances would constitute an unsafe and unsound practice.
7. The maximum Annual Percentage Rate is reached.
8. You become the subject of a proceeding in bankruptcy.
9. There is more than one borrower on the account, one borrower dies and that adversely affects our rights or interest in the collateral.

In the event that you suspend advances or reduce my Credit Limit, you will send me a written notice of your decision. If for any reason, I believe my Credit Limit should be reinstated, I must send you a written request that you re-evaluate my situation and include in the request the reasons why.

Termination
If I am in default and after you give any legally required notice and opportunity to cure the default, you may at your option do any of the following:

1. You can terminate this Line of Credit and refuse to make further advances.
If my Line of Credit is terminated, I cannot obtain further advances and I will be obligated to pay back my unpaid loan balance, finance charges and other charges due, in full, immediately upon your demand. If you terminate this Line of Credit as provided for in this Agreement, you will send me the notice of termination at my last address known to you. The termination will not affect my obligation to repay advances made prior to the termination, nor will it alter my duties to perform under the terms of the security instrument until such instrument is released.

2. I may terminate this Line of Credit and cancel this agreement at any time upon written notice to you. The notice of termination will be sent to VirtualBank/Lydian Mortgage 3801 PGA Blvd. Suite #700, Palm Beach Gardens, FL 33410.

Warranties and Representations I have the right and authority to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing me or to which I am a party.

Insurance
I understand and agree that any insurance premiums paid to insurance companies as part of this Line of Credit will involve money retained by you or paid back to you as commissions or other remuneration.

1. Property Insurance - I will insure and retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing this Line of Credit.
2. Flood Insurance - Flood insurance may be required. I may obtain flood insurance from anyone I want that is acceptable to you.
3. Insurance Warranties - I agree to purchase the insurance coverage required, in the amounts you require, as described in this or any other documents I sign for this Line of Credit. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this Agreement are paid in full.

Prepayment. If I prepay in full or if I default and you demand payment of the unpaid balance, I may be entitled to a partial refund credit of any prepaid unearned insurance premiums. This refund may be obtained from you or from the insurance company named in my policy or certificate of insurance.

Tax Deductibility
I understand that I should consult a tax advisor regarding the deductibility of interest and charges on this Line of Credit.

Waivers and Consent
To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers By Borrower. In addition, I, and any party to this Agreement and Line of Credit, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Agreement.

(1) You may renew or extend payments on this Agreement, regardless of the number of such renewals or extensions.
(2) You may release any Borrower, endorser guarantor, surety, accommodation maker or any other co-signer.
(3) You may release, substitute or impair any Property securing this Agreement.
(4) You, or any institution participating in this Agreement, may invoke your right to set-off.
(5) You may enter into any sales, repurchases or participations of this agreement to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Agreement as a Borrower is authorized to modify the terms of this Agreement or any instrument securing, guarantying or relating to this Agreement.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Agreement, or other Line of Credit documents, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

Joint and Individual Liability and Successors
My obligation to pay this Line of Credit is independent of the obligation of any other person who has also agreed to pay it. You may sue me, or anyone else who is obligated on this Line of Credit, or any number of us together, to collect this Line of Credit. Extending this Line of Credit or new obligations under this Line of Credit, will not affect my duty under this Line of Credit and I will still be obligated to pay this Line of Credit. The duties and benefits of this Line of Credit will bind and benefit the successors and assigns of you and me.

Integration and Severability
This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

Interpretation
Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

Notice, Financial Reports and Additional Documents.
Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Line of Credit and to confirm your lien status on any Property. Time is of the essence.

Credit Information
I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Line of Credit. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

Agreement to Arbitrate
You or I may submit to arbitration any dispute, claim, or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Agreement and any other documents, instruments and proposed loans or extensions of credit that relate to this Agreement. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce the debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may seek provisional remedies at any time from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment

or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Agreement, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Agreement or another writing.

Waiver of Trial for Arbitration
You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by a judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

Signatures
By signing under seal, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

_______________________________ _______________________________
(Borrower Name) CHARLES A. ELFSTEN (Date)

_______________________________ _______________________________
(Borrower Name)MARIE A. ELFSTEN (Date)

_______________________________ _______________________________
(Borrower Name) (Date) (Borrower) (Date)

STATE OF , COUNTY, ss:

The foregoing instrument was acknowledged before me, on this ______________ day of ______________, __________, by ______________________________

who is personally known to me (yes/no) or who provided ______________________ as identification.

My Commission expires:

_______________________________
Print Name:
Notary Public

# HOUSER & ALLISON

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

ERIC D. HOUSER, CA
JEFFREY S. ALLISON, CA/NV
ROBERT W. NORMAN, Jr. CA/VA/AZ
JENNIFER L. LALLITE, CA/NY
J. OWEN CAMPBELL, CA/OR
SARA L. MARKERT, CA/NY
CHARLES T. PICCUTA, CA/IL/NV/AZ
BRIAN S. EDWARDS, CA
CHRISTIAN C. CHAPMAN, CA
JASON K. BOSS, CA
DAVID K. PALMER, CA
REBECCA L. WILSON, CA/MA
KEVIN R. BROERSMA, CA
BRENT A. KRAMER, CA/FL
STEVE W. PORNBIDA, CA
JOSHUA A. SMISKO, CA
CHRISTOPHER R. BLEVINS, CA/AZ
JILL S. DAVID, CA/NY
DENETTA E. J. SCOTT, CA/DC
NICOLE M. JOHNSON, CA
BRIAN J. WAGNER, CA
KATHERINE A. COMAN, CA
CARRIE N. HEIECK, CA
PAUL J. CHRISTENSEN, CA
STEVEN S. SON, CA

ORANGE COUNTY
9970 Research Drive
Irvine, California 92618
Telephone: (949) 679-1111
Facsimile: (949) 679-1112

LOS ANGELES COUNTY
3760 Kilroy Airport Way, Suite 260
Long Beach, California 90806
Telephone: (562) 256-1675
Facsimile: (949) 679-1112

SAN DIEGO COUNTY
701 Palomar Airport Road, Suite 200
Carlsbad, California 92011
Telephone: (760) 603-9664
Facsimile: (949) 679-1112

NEW YORK, NY
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone: (212) 209-3954
Facsimile: (212) 986-1952

April 28, 2011

VIA EMAIL
Timothy P. Peabody, Esq.
peabodylaw@aol.com

Name: Charles A. Elfsten and Marie A. Elfsten
Loan Number: 23800501 & 23869894
Property: 40 Chandon Unit 31
Newport Coast, CA 92657

Tim,

We are in receipt of your reinstatement amount request dated April 27, 2011. The following amounts are due to reinstate loan number 23800501 as of April 27, 2011.

| | |
|---|---|
| Total Payments Due (13 payments from 04/01/10-04/01/11) | $ 51,960.41 |
| Accrued Late Charges | $ 2,077.60 |
| Bad Check Fee | $ 25.00 |
| Other Fees | $ 55.60 |
| Mortgage Rec Corp Adv | $ 571.25 |
| Attorney Fees & Costs | $ 5,562.15 |
| Foreclosure Fees & Costs | $ 2,986.33 |
| Suspense | ($ 3,254.01) |
| Total | $ 59,984.33 |

Attorneys licensed to practice in Arizona, California, Florida, Illinois, Massachusetts, Nevada, New York, Oregon, Washington state & Washington D.C.
WWW.HOUSER-LAW.COM

EXHIBIT C

Additionally, the total reinstatement amount for the second lien on the property, loan no. 23869894, as of April 27, 2011 is as follows:

| | |
|---|---|
| Total Payments Due (4 payments from 01/25/11-04/25/11) | $ 4,000.45 |
| Accrued Late Charges | $ 150.02 |
| Total | $ 4,150.47 |

Virtual Bank, a division of Lydian Private Bank will accept a minimum payment in the amount of $41,600.00 by the close of business on April 29, 2011 to postpone the foreclosure sale currently scheduled for May 2, 2011. The payment must be made by cashier's check and delivered to the undersigned by 5:00 p.m. on April 29, 2011. The remaining delinquency on both loans, totaling $22,534.80, will be spread out in equal monthly payments over the next three months in the amount of $7,511.60 per month along with each monthly payment. Each payment will be due on the first day of each month beginning June 1, 2011. Payments need be made to the undersigned by cashier's check. Acceptance of any funds shall not waive any amounts still due or prevent a foreclosure sale if timely payment is not made. Time is of the essence.

Virtual Bank, a division of Lydian Private Bank is also open to negotiation of a Deed In Lieu of Foreclosure if your client cannot make the payment. Should you have any questions, please contact me at (949) 679-1111.

Sincerely,

HOUSER & ALLISON
A Professional Corporation

[signature]

ERIC D. HOUSER

I:\CIVIL\VirtualBank\Elfeten, Charles (54678)\Reinstatement Letter.doc

PROOF OF SERVICE BY MAIL
(C.C.P. Section 1013(a), 2015.5)

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, Sandra Gomez, affirm and declare:

I am employed in the county aforesaid; I am over the age of eighteen and not a party to the within action; my business address is 13522 Newport Avenue, Suite 201, Tustin, CA 92780.

On January 26, 2012, I served the foregoing document described as:

FOURTH AMENDED COMPLAINT

in Orange County Superior Court {Elfsten v. Lydian Private Bank, et al, Case No. 30-2010-00434711}

In this action by placing a true copy thereof enclosed in a sealed envelope(s) addressed as follows:

Eric D. Houser, Esq.
Brian Edwards, Esq.
HOUSER & ALLISON
A Professional Corporation
9970 Research Drive
Irvine, California 92618
P: (949) 679-1111
F: (949) 679-1112

WRIGHT, FINLAY & ZAK, LLP
Robin Prema Wright, Esq.
Nicole K. Neff, Esq.
4665 MacArthur Court, Suite 280
Newport Beach, Califoria 92660
P: (949) 477-5050
F: (949) 477-9200

(X) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Tustin, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed ordinary course cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

( ) The document such was transmitted by **FACSIMILE** to the facsimile numbers indicated for the addressee(s), and such transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

( ) I caused such envelope to be **HAND DELIVERED BY COURIER** to the offices of the addressee(s) indicated.

( ) I caused such envelope to be delivered by ________ **EXPRESS** to the offices of the addressee(s) indicated.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed this 26th day of January 2012 at Tustin, California.

SANDRA GOMEZ

RODI POLLOCK PETTKER CHRISTIAN & PRAMOV
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 444 South Flower Street, Suite 1700, Los Angeles, CA 90071-2901.

On July 16, 2012, I served true copies of the following document(s) described as **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 and 1441 (FEDERAL QUESTION) and 12 U.S.C. §§ 1819(b)(2)(B) and 1821(d)(6)(A)) (FDIC as PARTY)** on the interested parties in this action as follows:

George Steven Wass
c/o Cliff Casey
777 E. Tahquitz Canyon #200-19
Palm Springs, CA 92262
Tel: 760/774-3000

Eric D. Houser, Esq.
Brian Edwards, Esq.
Houser & Allison
A Professional Corporation
9970 Research Drive
Irvine, CA 92618
Tel: 949/679-1111
Fax: 949/679-1112

Robin Prema Wright, Esq.
Nicole K. Neff, Esq.
Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Tel: 949/477-5050
Fax: 949/477-9200

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Rodi Pollock Pettker Christian & Pramov's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 16, 2012, at Los Angeles, California.

Lupe Dominguez

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐ )

Charles E. Elfsten and Marie A. Elfsten

**DEFENDANTS**

Lydian Private Bank, a foreign business entity; Virtual Bank, a foreign business entity and subsidiary of Lydian Private Bank, Aztec Floreclosure Corporation, a California Corporation; Zulines Gonzalez, an individual, et al.,

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

George Steven Wass
c/o Cliff Casey
777 E. Tahquitz Canyon #200-19
Palm Springs, CA 92262
Tel: 760/774-3000

Attorneys (If Known)

Patrick J. Cain
Rodi Pollock Pettker Christian & Pramov
444 South Flower Street, Suite 1700
Los Angeles, CA 90071
Tel: 213/895-4900

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only** (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT: $** DAMAGES ACCORDING TO PROOF

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This is a removal based on the FDIC as receiver having substituted in as a party to the State Court action.

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/ PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS - Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: SACV12-1159 AG (RNBx)

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No [ ] Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No [ ] Yes
If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
[ ] A. Arise from the same or closely related transactions, happenings, or events; or
[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or
[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or
[ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
[x] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** July 16, 2012
Patrick J. Cain

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |